## MOSES BYRAM *v.* HENRY MCDOWELL *et al.*

1. PLEADINGS AND PRACTICE. *Judgment against non-resident.* By the law of this State a judgment against a non-resident by attachment of property without service of process or publication, as required by statute, is void, and no proof *aliunde* is admissible to show publication, the record itself being silent on the subject.

2. CHANCERY PLEADINGS AND PRACTICE. *Collateral attack on judgment.* A judgment is only collaterally, not directly, impeached by a bill which does not make the judgment-creditor a party, and only proceeds against one of several judgment-defendants.

3. SAME. *Void judgment.* A void judgment cannot be validated as to third persons who have previously acquired antagonistic rights, nor perhaps as to the party himself, although the latter may personally estop himself from contesting rights acquired under it, such estoppel not affecting third persons claiming under him by antecedent act.

4. SURETY. *Contribution.* A surety who pays, as between him and other sureties, more than his share of the common debt, is entitled to such contribution from the co-sureties as will meet the equity of the case.

---

FROM SUMNER.

---

Appeal from the Chancery Court at Gallatin. GEO. E. SEAY, Ch.

J. J. TURNER and JNO. E. & E. A. GARNER for complainant.

C. R. & LEE HEAD for defendants.

COOPER, J., delivered the opinion of the court.

On February 12, 1877, John Buntin, as the payee of a promissory note, brought suit in the circuit court of Sumner county against J. C. Buntin, Alfred Graves,

Henry McDowell, Thomas Graves and Moses Byram, as the makers of said note. A summons issued to Sumner county against all the parties, which was executed on the first three of the above defendants. A counterpart summons issued to Robertson county, and was executed on Moses Byram. The defendant, Thomas Graves, was a non-resident of the State, and upon proper affidavit to this effect, a writ of attachment was issued to Sumner county, and levied upon certain lands as the property of the said Thomas Graves, and a counterpart writ of attachment was issued to Robertson county, which was levied on other land as the property of Thomas Graves. Upon return of these attachments, levied as aforesaid, an order of publication was made by the clerk, and also by the court, but there is no proof in the record that the publication was in fact made, nor do the judgments in the cause recite the fact of publication. On October 27, 1877, a judgment by default was taken against all the parties for $2547.86 and costs, for which a *fi. fa.* was awarded. An order of sale was also taken to sell the lands of Thomas Graves attached in Sumner county. On July 9, 1878, another judgment was rendered for the sale of the land attached in Robertson county, reciting the former judgment, and that judgment was pronounced upon the attachment writs, but was only entered as to the land attached in Sumner county, and ordering the entry to be made *nunc pro tunc.* On July 1, 1878, Byram and McDowell each paid upon the execution issued on this judgment, one-third of the amount due, and on October 26,

1878, Byram paid the remaining third. As between the makers of the note, J. C. Buntin and Alfred Graves were principals, and Byram, McDowell and Thomas Graves sureties. The principals having become insolvent, the sureties were compelled to pay the debt.

On November 27, 1878, the present bill was filed by Moses Byram against Henry McDowell, Thomas Graves and Wilson N. Wright. The object of the bill was primarily to subrogate the complainant to the rights of John Buntin, the judgment-creditor, under his attachments in the suit at law of the property of Thomas Graves, and to enforce the same to the extent of the one-third of the debt to which Thomas Graves was liable, by way of contribution as between the sureties, and if this could not be done, then for contribution between the sureties, so as to equalize the burden. Graves and McDowell allowed the bill to be taken for confessed against them. Wright was made a defendant, because on April 6, 1877, Thomas Graves had conveyed to him in trust to secure his creditors, including McDowell and Byram as his co-sureties on the Buntin note, all his lands in Sumner and Robertson counties, being the lands attached in the Buntin suit. This deed was noted for registration in Robertson county on the day of its execution, and in Sumner county three days thereafter. The bill claimed that the attachment liens, to which the complainant asked to be subrogated, were superior to the rights of the trustee under the trust assignments, the attachments having been levied

on 17th and 21st of February, 1877. It turned out
that the defendant, Wright, had declined to execute
the trust, and John Y. Hutchison was appointed trus-
tee in his place. By consent of complainant, Hutch-
ison was permitted to come in as defendant instead
of Wright, and answer the bill. He filed his an-
swer as a cross-bill, attacking the validity of the
attachment proceedings, but made no person a de-
fendant thereto except the complainant, Byram. The
bill could not, therefore, be treated as directly im-
peaching the attachment proceedings, for want of the
necessary parties. The chancellor, on final hearing,
subrogated the original complainant to the attachment
liens, and ordered the land sold for Graves' propor-
tion of the debt. Upon the appeal of Hutchison,
the Referees report in favor of affirming the chan-
cellor's decree, and the appellant has excepted.

The first exception is, that there was no publica-
tion in the attachment suit at law for the defendant,
Thomas Graves, and that the judgment against him
was, therefore, void, the Referees being in error in
holding otherwise. The Code, after giving directions
as to the mode of proceeding in attachment cases,
says, section 3524: "The attachment and publication
are in lieu of personal service upon the defendant,
and the plaintiff may proceed, upon return of the
attachment duly levied, as if the suit had been com-
menced by summons." In those States in which
attachment suits are treated as proceedings *in rem*,
the levy of the attachment has been held to bring
the party into court, and in the absence of any thing

showing the contrary, the presumption · in favor of the regularity of the proceedings of a court of general jurisdiction has been held sufficient .to support the judgment without any thing to show publication : Drake. on Attach., sec. 447 ; Freeman on Judg., sec. 126. The rule is otherwise in those States in which, as in our State, the suit by attachment of property is held to be *in personam*, the attachment being only to impound the property to meet the judgment. Our courts have, therefore, invariably held that publication is essential to bring a non-resident defendant into court. And it has been expressly ruled that a judgment at law in a suit commenced by summons, and also by an .original attachment sued out at the same time, is void when it appears that the summons was returned not found, and when the record fails to show, either by evidence embraced therein, or by an entry on the docket or minute book, or by a recital in the judgment, that publication had been made under the attachment in accordance with the requirements of the statute : *Bains* v. *Perry*, 1 Lea, 37. That is exactly the case before us. And proof *aliunde* is inadmissible, either to supply omissions or to contradict a record. The record is the best and only competent evidence of its contents : *Jones* v. *Hollingsworth*, 10 Heis., 653 ; *Brown* v. *Wright*, 4 Yer., 57 ; *Walker* v. *Cottrell*, 6 Baxt., 257.

The Referees find that Thomas Graves is estopped to deny the validity of the judgment in the attachment suit, because he · appeared in said court in said cause and recovered a judgment by motion against

the principals on the note. The defendant, Hutchison, excepts to this finding of fact. The conclusion of the Referees rests on the ground that in the transcript of the suit at law there is, under the heading of the case, what purports to be a judgment by motion, rendered on November 16, 1877, in favor of McDowell, Byram and Thomas Graves against James C. Buntin as one of the principals on the note. The supposed judgment omits to state any amount of recovery, and is probably fatally defective. But the heading of the judgment with the style of the original case was, of course, a mistake. The motion by sureties against their principal is an independent action, which, although it may be made in the court in which the judgment was rendered, may also be made in any court having jurisdiction of the amount, or in the county of the defendant's residence: Code, secs. 3589, 3632. Graves did not, therefore, appear in the attachment cause, and he positively denies in his deposition that he had any thing to do with the motion, or any knowledge of it. There is proof that on July 1, 1878, he was with McDowell and Byram at the office of the lawyer of John Buntin, the judgment-plaintiff, at which time he sought to have an execution issued on the original judgment against James C. Buntin, one of the principals, and agreed to share in the costs of a suit which McDowell had already commenced in the chancery court against James C. Buntin, seeking to reach certain property as the property of Buntin for the satisfaction of the debt. At this interview, both McDowell

and Byram think, the judgment by motion was talked about, but their testimony is very meager and unsatisfactory on the point, being so mixed up with what was said about McDowell's chancery suit that the witnesses may well have confounded the two. The motion was, it will be remembered, made November 16, 1877, and the conversation at the lawyer's office in July, 1878. There is no proof that Graves authorized the motion to be made, or knew about it before that interview, and the manner in which both Byram and McDowell are interrogated on the subject fairly implies that he did not. Byram is asked whether at the lawyer's office any thing was said by Graves, in his presence, about the judgment by motion. He remembers the meeting, and that he and Graves agreed to go in with McDowell in his bill, but does not answer the question about the motion. All that he says is: "We were equal in obtaining the judgment against J. C. Buntin," which simply means, in view of the question, that all their names were used in it. McDowell is asked whether the judgment by motion was not known to Graves, and wanted by him and all the sureties. His answer is: "Yes, sir, and old man Byram urging it." The testimony is not sufficient, under the circumstances, to show that Graves participated in taking the judgment by motion, nor, of course, even if he did, that he thereby became a party to the attachment suit. Besides, it is not shown that he knew the facts in relation to the judgment in the attachment suit at the time of the meeting at the lawyer's office. And he had long

before conveyed the lands in controversy by the trust assignment. If the judgment was void, it could not be validated as to third persons who have previously acquired rights, nor perhaps as to the party himself. But the party may be personally estopped by his subsequent acts from contesting rights acquired under it: *Haynes* v. *Powell,* 1 Lea, 347. He cannot estop other persons claiming under him by act antedating the estoppel.

The complainant is, therefore, not entitled to be subrogated to any rights as against the land attached. But he is entitled to a decree against McDowell and Graves for their respective contributory parts of the overpayment made by him as surety, the judgment against McDowell to be credited with one-half of any collections made out of Graves, and McDowell to be subrogated to one-half of the recovery against Graves, if he, McDowell, pays in the first instance the recovery against him, and so in proportion to his payments.

The decree of the chancellor will be reversed, the report of the Referees set aside, and a decree entered here in accordance with this opinion. The complainant and the defendants, McDowell and Graves, will pay the costs of the entire cause.